U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAFE EDWARD DAUGHERTY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.2:16-CV-00408-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 15, 25. Attorney Dana C. Madsen represents Lafe Edward Daugherty (Plaintiff); Special Assistant United States Attorney Summer Stinson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on November 22, 2013, Tr. 75, alleging

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

disability since January 1, 2008, Tr. 167, 173, due to seizures, depression, a back injury, epilepsy, and polymicrogyria. Tr. 214. The applications were denied initially and upon reconsideration. Tr. 102-09, 113-23. Administrative Law Judge (ALJ) Donna L. Walker held a hearing on January 20, 2016 and heard testimony from Plaintiff, medical expert, Ronald Devere, M.D., and vocational expert, Richard Cheney. Tr. 39-74. At the hearing, the ALJ granted Plaintiff's motion to withdraw his Request for Hearing on the DIB claim. Tr. 41-42. The DIB claim was dismissed and the hearing continued as an SSI only claim with an application date of November 22, 2013.[1] *Id*. The ALJ issued an unfavorable decision on February 8, 2016. Tr. 23-24. The Appeals Council denied review on September 28, 2016. Tr. 1-7. The ALJ's February 8, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 21, 2016. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 39 years old at the date of application. Tr. 167. He completed the twelfth grade in 1992. Tr. 215. His reported work history includes the jobs of inspector and machine operator. Tr. 197, 215. Plaintiff reported that he stopped working on January 1, 2008 due to his conditions. Tr. 214.

---

[1] It is unclear whether Plaintiff's appeal to this Court includes his DIB Claim. His Complaint specifically requests this Court set aside the Commissioner's decision in both the DIB and the SSI claims, ECF No. 4 at 2, but Plaintiff's briefing only addresses the SSI claim, ECF No. 15 at 1. This order will address both the DIB and the SSI claims.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant

cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 8, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 3, 1999, the original alleged date of onset. Tr. 25.

At step two, the ALJ determined Plaintiff had a severe impairment of "history of a seizure disorder." Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 28.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of work at the medium exertional level with the following limitations:

> the ability to lift and/or carry up to 50 pounds occasionally (1/3 of the workday) and 25 pounds frequently (2/3 of the workday); stand and/or walk up to 6 hours; and sit up to 6 hours. He has an unlimited ability to use bilateral upper extremities for pushing and pulling (other than as stated for lifting and carrying); unlimited ability to reach in all directions, including overhead bilaterally; unlimited use of bilateral hands for handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors); unlimited postural ability to balance, stoop (including bending at the waist), kneel or crouch (including bending at the knees) and frequently climb ramps, stairs, or crawl but never climb ladders, ropes or scaffolds; unlimited visual and communicative abilities; unlimited environmental exposure to exposure to [*sic*]

extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, or poor ventilation but should avoid concentrated exposure to vibration and hazards (such as machinery and heights). He can have superficial contact with the general public, could work in proximity to but not close cooperation with co-workers and supervisors, and would work best in a job with routine predictable tasks with clearly set goals and expectation.

Tr. 28-29. The ALJ concluded that Plaintiff did not have past relevant work. Tr. 32.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of pile setter[2], store laborer, and janitor. Tr. 33. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 3, 1999, through the date of the ALJ's decision. Tr. 33.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to make a proper step two determination, (2) failing to make a proper step three determination, (3) failing to properly weigh Plaintiff's symptom statements, and (4) failing to properly weigh the medical opinions in the record.

**1.      Step Two**

Plaintiff challenges the ALJ's step two determination alleging that she erred

---

[2]At the hearing, the vocational expert testified that Plaintiff could perform the job of "tile fitter," not "pile setter." Upon remand, the ALJ is to accurately reproduce the vocational expert's testimony if she relies on it in making her determination.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

by finding Plaintiff's mental health impairments and back/lumbar spine impairment nonsevere. ECF No. 15 at 12-13.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).

### A. Mental Health Impairments

The ALJ found Plaintiff's mental health impairments to be nonsevere. Tr. 26. In doing so, she discounted the opinion of examining psychologist, John Arnold, Ph.D. Tr. 26-28.

On January 13, 2016, Dr. Arnold evaluated Plaintiff, reviewed his medical records, and administered a Millon Clinical Multi-Axial Inventory, third edition (MCMI-III) and a mental status exam. Tr. 424-31. Dr. Arnold diagnosed Plaintiff with early onset persistent depressive disorder, generalized social phobia, schizoid personality disorder with dependent, depressive, and passive-aggressive features, and rule out somatic symptom disorder. Tr. 428. He opined that Plaintiff had a marked limitation in two areas of mental functioning and a moderate limitation in seven areas of mental functioning. Tr. 429-31.

The ALJ gave this opinion little weight because (1) the opinion was not supported by the evaluation, (2) it was inconsistent with Plaintiff's reported activities, and (3) there was no basis for the opined limitations in the abilities to accept-instructions and respond to criticism. Tr. 28.

An examining physician's opinion that is not contradicted by another

physician, can only be rejected for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise an examining physician's opinion that is contradicted by another physician, can only be rejected for "specific and legitimate reasons." *Id*. at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

None of the reasons provided by the ALJ meet the lesser standard of specific and legitimate. First, the ALJ found that the opinion was not supported by the claimant's mental status examination, his reports during the evaluation, or his mildly elevated scores. Tr. 28. Plaintiff's mental status exam showed his mood to be severely anxious and mildly depressed with a moderately constricted affect. Tr. 426. Otherwise the rest of the exam was within normal limits. *Id*. The MCMI-III showed a valid and reliable score that evidenced a mild clinical elevation supporting persistent depressive disorder, which is characterized as "two or more years of fairly continuous depressive symptoms." Tr. 427. The test also showed severely elevated scores on the anxiety scale consistent with "overall arousal and general angst." *Id*. Additionally, the test showed significant elevations on both the schizoid and dependent scales. *Id*. Dr. Arnold stated that "[t]hese scale elevations appear consistent with his self-reported chronic social alienation." *Id*.

In finding that the mental status exam, Tr. 426, was inconsistent with the opinion, the ALJ failed to draw any connection between the results of the mental status exam and the opined limitations and explain how they are inconsistent. Tr. 28. Likewise, the ALJ found Plaintiff's statements and the results of the MCMI-III, Tr. 427, were inconsistent with the opinion without providing any explanation.

Tr. 28. The ALJ simply asserted these were inconsistent with the opinion. *Id*. This is not sufficient to meet the specific and legitimate standard under *Magallanes* and *Embrey*.

Second, the ALJ found that Dr. Arnold's opinion was inconsistent with Plaintiff's reported activities, more specifically that "a life revolving around video gaming with others does not substantiated [*sic*.] marked limitations for working in coordination with others." Tr. 28. This is not supported by substantial evidence.

In addressing Plaintiff's activities of daily living, Dr. Arnold stated:

> Mr. Daugherty's lifestyle appears to adhere to a more textbook schizoid and dependent pattern. He has lived with his sister and brother-in-law since 1999. He added it is hard to get along with these people at times (who have let him live with them the past 15-16 years). He is a self-described night person, who gets up between midnight and 2am. He has a penchant for "MMO" on-line multiplayer video games. In point of fact aside from one close friend, these on-line relationships of sorts constitute his social life. He especially likes Star Trek-related games, and is an admitted 'Trekie.' Outside of his 3-D computer artwork, Mr. Daugherty endorsed investing eight to nine hours a day playing these games. The rest of his time is usually divided between watching TV and doing his leatherwork.

Tr. 427. Dr. Arnold found that Plaintiff had a marked limitation in the ability to work in coordination with or proximity to others without being distracted by them. Tr. 430. A marked limitation is defined as a "[f]requent interference on the ability to function in a work setting (i.e., 1/3 to 2/3 of an 8 hour workday)." Tr. 429. Despite the ALJ's assertion otherwise, an inability to work in proximity to others is not inconsistent with an individual whose social life is limited to online-gaming. As such, this was an error.

Third, the ALJ found that there was no basis for Dr. Arnold's opinion that Plaintiff had marked limitations in accepting instructions and responding to criticism. Tr. 28 *referring to* Tr. 430. Once again, the ALJ simply stated "there is

no basis for Dr. Arnold's speculation that the claimant was markedly limited for accepting instructions and responding to criticism." Tr. 28.  A mere conclusion that the limitation is unsupported is insufficient to meet the specific and legitimate standard.  *See Embrey*, 849 F.2d at 421-22.  Additionally, the results from the MCMI-III administered by Dr. Arnold appear to support limitations in regards to social functioning, "[t]hese scale elevations appear consistent with his self-reported chronic social alienation," and "a relatively lower level of confidence, his profile also suggests mild depressive and passive-aggressive features." Tr. 427.  The medical expert, a neurologist, who testified at the hearing, did not have access to Dr. Arnold's report.  Tr. 43-44.  Without expert testimony the ALJ is not in a position to decipher how a score on the MCMI-III would correlate with mental functional limitations, specifically the abilities to accept instructions and respond to criticism.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (the ALJ "must be careful not to succumb to the temptation to play doctor").  In conclusion, the ALJ failed to provide legally sufficient reason supported by substantial evidence to reject Dr. Arnold's opinion.

Because the finding of no impairment relies upon the erroneous rejection of a medical opinion supporting the impairment the ALJ's step two determination was an error.  Defendant argues that even if there was an error at step two, that error would be harmless.  ECF No. 25 at 6.  Defendant is accurate that a step two error can be harmless when step two is resolved in the claimant's favor.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that "in each case we look at the record as a whole to determine whether the error alters the outcome of the case.").

In this case, despite the ALJ's step two determination, the residual functional capacity determination addressed mental health limitations: "He can have superficial contact with the general public, could work in proximity to but not close cooperation with co-workers and supervisors, and would work best in a job

with routine predictable tasks with clearly set goals and expectation." Tr. 29. Therefore, Defendant's argument that the ALJ's error was harmless is not without merit. However, the ALJ's error was not just his step determination, but his rejection of Dr. Arnold's opinion, which included more severe limitations than addressed in the residual function determination at step four. Therefore, the ALJ's error was not harmless and the case is remanded for the ALJ to readdress Dr. Arnold's opinion and make a new step two determination.

### B. Back/Lumbar Spine Impairment

Plaintiff challenges the ALJ's determination that his back/lumbar spine impairment is nonsevere. ECF No. 15 at 13.

The record shows that on June 7, 2004, G.W. Bagby, M.D. completed an evaluation of Plaintiff for the Washington Department of Social and Health Services (DSHS). Tr. 291-96. As part of the evaluation, Dr. Bagby ordered x-rays of Plaintiff's lumbar spine, which revealed "[m]oderate degenerative facet disease at L5-S1." Tr. 294. Dr. Bagby opined that Plaintiff's physical problems stem from his seizures and inguinal hernia and he was able to do light work. Tr. 293. Plaintiff complained of some low back pain to J. Robert Clark, M.D. on November 29, 2004. Tr. 336. On May 15, 2014, June 19, 2014, and March 26, 2015, Plaintiff's symptom complaints were negative for back pain. Tr. 409, 412, 418. On December 30, 2015, Plaintiff reported upper back pain since 1999. Tr. 425.

The ALJ found Plaintiff's back/lumbar spine impairment to be a nonsevere. Tr. 26. He acknowledged that x-rays from June of 2004 showed moderate degenerative facet disease at L5-S1, but found that Plaintiff failed to seek any treatment for back pain since his amended alleged disability onset date of November 22, 2013. *Id.*

The ALJ is accurate that one abnormal x-ray that predates the relevant time period without more is not sufficient to support a severe impairment at step two as there is little evidence to support the notion that the impairment affects Plaintiff's

ability to work during the relevant time period. *See* 20 C.F.R. §§ 416.921; 416.922. In the decision, the ALJ found that the 2004 x-rays predated Plaintiff's amended onset date of November 22, 2013. Tr. 26. However, her decision is clearly for January 3, 1999 to February 8, 2016. Tr. 28-33. While the evidence of Plaintiff's back pain may be limited, the x-rays do not predated the period addressed by the ALJ's decision. Therefore, on remand, the ALJ will accurately define the relevant time period and determine an onset date that is supported by the record as a whole under S.S.R. 83-20 and address Plaintiff's back/lumbar spine impairment anew in the context of a clearly defined relevant time period.

**2.     Step Three**

Plaintiff alleges that the ALJ failed to consider Plaintiff's focal seizures when considering listings at step three. ECF No. 15 at 15.

In her decision, the ALJ addressed Listings 11.02 and 11.03. Tr. 28. Listing 11.02 addresses convulsive epilepsy, including grand mal and psychomotor seizures, and Listing11.03 addresses nonconvulsive epilepsy, including petit mal, psychomotor, or focal seizures. 20 C.F.R. § 404, Subpart P, App. 1, Listing 11.00 (2016).[3] The ALJ considered the frequency of Plaintiff's grand mal seizure activity when addressing the listings, but did not address Plaintiff's alleged nonconvulsive seizures or their alleged frequency. Tr. 28. Evidence in the file and

---

[3]On July 1, 2016, Social Security issued the Revised Medical Criteria for Evaluating Neurological Disorders. Listing 11.03 was removed and reserved and Listing 11.02 was expanded to cover all seizure activity. *See* Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048 (July 1, 2016), available at 2016 WL 3551949. The new listings took effect on September 29, 2016. *Id*. The Revised Medical Criteria for Evaluating Neurological Disorders directs reviewing courts to review the Commissioner's final decisions using the listing that was in effect at the time the decisions were issued. *Id*.

the expert testimony at the hearing suggests that additional medical evidence is necessary to establish the existence of these focal seizures. Tr. 52, 393. However, the ALJ's decision found "history of a seizure disorder" as a severe impairment at step two and the ALJ's decision failed to address these alleged focal seizures. Tr. 25. This was error. Therefore, upon remand, the ALJ will readdress step three and the ALJ will address Plaintiff's alleged nonconvulsive seizures.

3.  **Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were less than fully credible. ECF NO. 15 at 15-17.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff' symptom statements to be less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 30. The ALJ reasoned that Plaintiff was less than fully credible because (1) his medical records contradicted his allegations, (2) he did not follow prescribed treatment, and (3) his report of going to bed around noon and rising at midnight contradicted his alleged sleep difficulties.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary in accord with S.S.R. 16-3p.

### 4. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Ronald Devere, M.D., J. Robert Clark, M.D., and Diane Beernink, ARNP. ECF No. 15 at 17-19.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ is required to do more than offer her conclusions, she "must set

forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

### A. Ronald Devere, M.D.

Dr. Devere testified at the January 20, 2016 hearing and found Plaintiff capable of medium work. Tr. 48-49. The ALJ discussed the opinion, but failed to provide any specific weight to it in her decision. Tr. 31-32. Considering the case is being remanded for the ALJ to make a new step two determination, upon remand, the ALJ will address the opinion and provide it specific weight.

### B. J. Robert Clark, M.D.

Dr. Clark provided opinions in May of 2004 and March of 2005 that Plaintiff was able to perform medium work. Tr. 325-28, 341-44. The ALJ gave these opinions significant weight. Tr. 32. Despite this, the ALJ appeared to overlook Dr. Clark's opinion that Plaintiff had a marked limitation in the abilities to communicate and understand or following directions in the May 2004 opinion, Tr. 327, and a moderate limitation in the same areas in the March 2005 opinion. Tr. 434. Social Security Ruling (S.S.R.) 96-8p states that the residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Here the ALJ failed to state why this portion of Dr. Clark's opinion was omitted from the residual functional capacity determination when he gave the opinions significant weight. Therefore, upon remand, the ALJ will readdress Dr. Clark's opinions.

### C. Diane Beernink, ARNP

On September 18, 2013, Nurse Beernink completed a Physical Functional Evaluation form for DSHS in which she opined that Plaintiff was limited to sedentary work and had a marked limitation in sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping crouching, seeing, hearing,

and communicating. Tr. 392-93. She stated that Plaintiff needed a neurological consultation with an EEG to determine whether or not Plaintiff was having seizures. Tr. 393.

The ALJ gave this opinion little weight because Plaintiff had not taken his medication since early 2011 and despite the lack of medication, Plaintiff's seizure activity was limited to every six months. Tr. 32. The Court acknowledges that Nurse Beernink is not an acceptable medical source under the regulations as of the date of the ALJ's decision and, as so, the ALJ was only required to provide germane reasons for rejecting her opinion. 20 C.F.R. § 416.913(a) (2016)[4]; *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). However, considering the case is being remanded for the ALJ to make a new step two determination and address Plaintiff's alleged focal seizures with more specificity, the ALJ will readdress Nurse Beernink's opinion.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

---

[4]On March 27, 2017, this regulation was amended and the definitions of an acceptable medical source now appear in 20 C.F.R. § 416.902(a) and in claims filed with the agency after March 27, 2017, a nurse practitioner will be considered an acceptable medical source. Since Plaintiff filed this claim in 2013, this new rule is not applicable.

(noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to address the opinion of Dr. Arnold and make a new step two determination, accurately identify the relevant time period in the case, consider whether there is objective medical evidence to support the Plaintiff's alleged focal seizures in order to make a new step three determination, readdress Plaintiff's symptom statements, and properly address all the medical source opinions in the file. Additionally, the ALJ will need to supplement the record with any outstanding evidence and call a medical, a psychological, and a vocational expert to testify at a new hearing.

Considering Plaintiff was unclear as to his intentions regarding the resurrection of his DIB claim on this appeal, the Commissioner will set aside Plaintiff's withdrawal of his Request for Hearing in the DIB claim and consider both the DIB and the SSI claims upon remand. If it was not Plaintiff's intention to appeal the DIB claim, on remand he can renew his motion to withdraw his Request for Hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED February 12, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE